**EDUCATION**

**PUBLIC SCHOOLS – COUNTIES – TAXATION – GENERAL ASSEMBLY MAY ENACT LAW REMOVING COUNTY TAX LIMITATIONS THAT RESTRICT FINANCIAL SUPPORT OF PUBLIC SCHOOLS**

November 16, 1994

*Mr. Donald P. Hutchinson, Chairman*
*Governor's Commission on School Funding*

You have requested our opinion on the authority of the General Assembly to prohibit local governments or voters from adopting tax limitation measures that would restrict the raising of revenue to support public schools.

For reasons detailed below, we conclude that the General Assembly by public general law may prohibit local governments or voters from adopting tax limitation measures that restrict financial support of public schools.

**I**

**Background**

One of the recommendations of the Governor's Commission on School Funding was to "[r]equire local jurisdictions to provide funding necessary for high quality education." *Report of the Governor's Commission on School Funding* 11 (January 1994). The Commission's report observed that "tax limitation measures can prevent local governments from adequately funding public services, including public schools." *Id.* Your letter requesting this opinion elaborated as follows:

> The Commission is concerned that some local jurisdictions are funding their public schools at levels below what would be reasonably expected given their wealth base. The local imposition of caps on property taxes

and/or choices in where jurisdictions direct their locally raised dollars effectively limit their investment in education. While the State requires a "local maintenance of effort" of local jurisdictions, insuring that local spending on education does not decline as state aid increases, this requirement does little to correct funding inequities.

Letter from Donald P. Hutchinson, Chairman, to Attorney General Curran (September 29, 1994).

Thus, the Commission went on to recommend that "an Attorney General's opinion should be sought on whether the Legislature has the authority to prohibit local governments or voters from adopting such tax limitation measures." *Report* at 11. Your letter implements this aspect of the Commission's recommendation.

## II

### Tax Caps and Public General Law

Property tax caps have been adopted by charter amendment in several Maryland jurisdictions. A tax cap can result from a charter initiative by the voters or an enactment by the legislative body of the subdivision, with voter ratification. *See, e.g.*, §817B of the Prince George's County Charter (charter amendment by petition); §305 of the Montgomery County Charter (charter amendment by council action). Only in charter home rule jurisdictions can such tax caps be adopted without the prior approval of the General Assembly.[1]

Nevertheless, tax cap charter amendments, like any other charter provision, are subject to the "Public General Laws of this State." Article XI-A, §1 of the Constitution. Thus, they may not conflict with a general law enacted by the General Assembly: "We

---

[1] Under Article XI-F, §8 of the Maryland Constitution, the General Assembly has the exclusive power to enact a property tax cap for a code home rule county. The Legislature also has plenary power to enact such measures for commissioner counties. *See* Article VII, §1 of the Constitution.

have on numerous occasions pointed out that '[w]hen a provision in a county charter conflicts with a public general law, the public general law prevails under Art. 11-A, §1.'" *Board of Supervisors of Elections v. Smallwood*, 327 Md. 220, 242, 608 A.2d 1222 (1992) (quoting *Rosecroft Trotting & Pacing Ass'n, Inc. v. Prince George's County,* 298 Md. 580, 599, 471 A.2d 719 (1984)). *See also, e.g., Prince George's County v. Maryland-National Capital Park & Planning Comm'n,* 269 Md. 202, 223 and 226, 306 A.2d 223, *cert. denied,* 414 U.S. 1068 (1973). So, too, by enactment of a general law, the Legislature could override existing tax cap provisions in county charters, as well as limitations adopted in the future.[2]

There is no doubt that the State's laws on public schools are public general laws. In fact, the Court of Appeals has held that the area of public education is preempted by the General Assembly. *McCarthy v. Board of Education*, 280 Md. 634, 651, 374 A.2d 1135 (1977). The Court also has held that education funding mandated by State law is not subject to county charter fiscal requirements. *Board of Education v. Montgomery County,* 237 Md. 191, 197, 205 A.2d 202 (1964). Hence, a public general law related to public school financing could constitutionally remove any charter impediment to what the General Assembly deems to be adequate school funding.

Finally, even in the absence of a new general law expressly superseding tax caps with respect to education funding, the Court of Appeals has said that, because "[c]ounty governments are required by state law to provide ... public education," if "it is subsequently demonstrated in a particular case that a local limitation on property tax revenues so hampers a county government that it cannot perform the duties required under state law, a tax limitation charter provision may well be found to be invalid as applied." *Board v. Smallwood,* 327 Md. at 243-44. *See also* 64 *Opinions of the Attorney General* 51, 54-55 (1979) (If, as a result of Prince George's TRIM, all sources of income available to the county are insufficient to meet the mandate of State law governing school financing, the charter amendment would "become inoperative to the extent of the conflict.").

---

[2] This office so advised a decade ago. *See* letter of advice from Assistant Attorney General Richard E. Israel to William S. Ratchford II, Director of Fiscal Services (June 17, 1983).

# III

## Conclusion

In summary, it is our opinion that the General Assembly by public general law may prohibit local governments or voters from adopting tax limitation measures that would restrict the raising of revenue to support public schools.

J. Joseph Curran, Jr.
*Attorney General*

Robert A. Zarnoch
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*